UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| EMMIS PUBLISHING, L.P., et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-02504-SEB-MJD |
| | ) | |
| HOUR MEDIA GROUP LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTION FOR LEAVE TO FILE AMENDED ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIM**

This matter is before the Court on Defendant's *Motion for Leave to File Amended Answer, Affirmative Defenses, and Counterclaim*. [Dkt. 51.] Defendant initially asserted one counterclaim for breach of contract. Defendant now seeks to add an additional breach of contract claim, two fraud claims and a claim for indemnification. Plaintiffs oppose only the proposed fraud claims. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion.

## I.     Background

This breach of contract action arises from the sale of four magazine publications. Plaintiffs Emmis Publishing, L.P., Los Angeles Magazine Holding Co., Inc., and Orange Coast Kommunications, Inc. ("Emmis") and Defendant Hour Media Group LLC ("Hour Media") entered into an Asset Purchase Agreement ("APA") wherein Hour Media agreed to purchase the assets of four Emmis publications: Los Angeles Magazine, Atlanta Magazine, Cincinnati Magazine, and Orange Coast Magazine. In the lawsuit, Emmis asserts breach of contract claims

1

against Hour Media and seeks a declaratory judgment that Hour Media is not entitled to indemnification under the APA. [Dkt. 1.]

Hour Media asserted a counterclaim for breach of contract with its answer [Dkt. 22] and now seeks to add an additional counterclaim for breach of contract as well as two fraud claims and a claim for indemnification [Dkt. 55-1]. Emmis asserts the Motion should be denied with respect to the two fraud claims, arguing the claims are nothing more than Hour Media's breach of contract claims "repackaged" as torts. [Dkt. 61 at 5.][1] Hour Media's Motion was timely filed on December 15, 2017, the deadline for amending the pleadings as set forth in the parties' Case Management Plan [Dkt. 32 at 3.]

## II. **Legal Standard**

Leave to amend pleadings is to be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). The Court, however, may deny leave to amend a complaint when there is undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or when the amendment would be futile. *Bethany Phamacal Co. v. QVC, Inc.*, 241 F.3d 854, 860-61 (7th Cir. 2001). Futility is measured by the capacity of the amendment to survive a motion to dismiss. *See Crestview Village Apts. v. U.S. Dep't Of Housing & Urban Dev.,* 383 F.3d 552, 558 (7th Cir. 2004). That means a proposed amendment must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007).

## III. **Discussion**

Emmis asserts Hour Media's proposed fraud claims are futile, and urges the Court to deny the Motion as to these claims. The Court will address each proposed fraud claim in turn below.

---

[1] In response to the instant motion, Emmis does not challenge the breach of contract or indemnification counterclaims.

2

## A. Count II

As a condition of the sale, at the time of the closing the assets acquired were to exceed the liabilities by an amount in excess of $1,000,000.00. [Dkt. 5 at 20.] Section 1.9 of the APA provides:

> If the Closing Date Balance Sheets (as defined below) show in the aggregate that the current assets thereon acquired by Buyer hereunder do not exceed the current liabilities thereon assumed by Buyer hereunder by One Million Dollars ($1,000,000) or more, then the amount of such deficiency shall be disbursed to Buyer within thirty (30) days of the Closing.

*Id*. The parties agree the assets did not exceed the liabilities by $1,000,000 at the time of closing, but they disagree as to the amount of the deficiency. Emmis asserts its Net Working Capital on the applicable date was $893,740.00, therefore Emmis owed Hour $106,260.00 pursuant to the APA. [Dkt. 51-1 at 29.] Hour Media asserts in its first breach of contract claim that the Closing Date Balance Sheets provided by Emmis are inaccurate and Emmis owes it more than that amount. For example, Hour Media asserts the Closing Date Balance Sheets overstate the value of certain assets and understate certain liabilities. In this breach of contract claim, Hour Media seeks to recover the "true deficiency" between $1,000,000 and the actual value of the assets acquired.

Hour Media now proposes a separate claim for fraud based upon the same set of factual allegations. Hour Media asserts Emmis falsely represented the assets and liabilities on the Closing Date Balance sheet to make it appear Emmis owed Hour Media less money that it actually did. Emmis contends this fraud claim is simply a "repackaging" of its breach of contract claim with indistinguishable damages. A claimant who brings both a breach of contract and a fraud claim must prove that (1) the breaching party committed the separate and independent tort of fraud; and (2) the fraud resulted in injury distinct from that resulting from the breach.

3

*v. Johnson,* 734 N.E.2d 1066, 1073 (Ind. Ct. App. 2000). Actual fraud exists when all of the following elements are fulfilled: (1) a material misrepresentation of past or existing facts; (2) made with knowledge or reckless ignorance of falsity; (3) causing the claimant to rely upon the misrepresentation to the claimant's detriment. *Loomis v. Ameritech Corp.,* 764 N.E.2d 658, 667 (Ind. Ct. App. 2002). A knowing misstatement of facts that causes a signing of a writing is fraud. *Guarantee Trust Life Ins. Co. v. Palsce,* 641 N.E.2d 1266, 1269 (Ind. Ct. App. 1994).

Emmis asserts Hour Media has not sufficiently alleged an independent tort claim. Specifically, Emmis asserts Hour Media has not alleged (and cannot allege) that it detrimentally relied upon Emmis' alleged misrepresentations in the Closing Date Balance Sheets. [Dkt. 61 at 7-9.] The Court agrees. Hour Media repeatedly alleges Emmis "knowingly misrepresented" assets and liabilities in the Closing Data Balance Sheets in order to minimize the deficit owed to Hour Media. Hour Media even argues on reply that "the fraud is the factual misrepresentation with the *Post* Closing Balance Sheets that fraudulently show 'deferred expense' that does not exist." [Dkt. 64 at 5.] But allegations of misrepresentations alone do not constitute a valid fraud claim. Hour Media cannot recover for fraud unless it reasonably relied on Emmis' misrepresentations to its detriment. *Short v. Haywood Printing Co., Inc.*, 667 N.E.2d 209, 213 (Ind. Ct. App. 1996). Nowhere in Count II does Hour Media allege it detrimentally relied on Emmis' misrepresentations in the Closing Data Balance Sheet. In fact, the alleged misrepresentations were not even communicated to Hour Media until *after* the execution of the APA. The parties executed the APA on February 23, 2017. [Dkt. 5-1 at 15.] Emmis delivered the Closing Data Balance Sheets to Hour Media via email on March 16, 2017. [Dkt. 51-1 at 29.]

Even if Emmis made all of the misrepresentations alleged by Hour Media, in the absence of reliance those misrepresentations establish only that Emmis breached the contract by failing to

4

pay the true deficit owed under the APA. *See Tobin v. Ruman*, 819 N.E.2d 78, 86 (Ind. Ct. App. 2004) ("While Tobin may believe that [defendants'] breach was fraudulent, he has offered no evidence establishing that their actions constitute the separate and independent tort of fraud.") Consequently, Hour Media's proposed fraud claim is futile and the motion to amend must be **DENIED** as to Count II (Fraud).

### B. Count IV

In the second proposed fraud counterclaim, Hour Media asserts Emmis misrepresented its compliance with this section of the APA:

> Seller has complied in all material respects with all laws, rules and regulations, and all decrees and orders of any court or governmental authority which are applicable to the operation of the Business, and to Seller's knowledge, there are no governmental claims or investigations pending or threatened against Seller in respect of (sic) the Business except those affecting the industry generally.

[Dkt. 5-1 at 22.] Hour media contends this representation was false because it later learned Emmis had been involved in a trademark lawsuit, and agreed in the settlement of the lawsuit to not use the marks and domain names "HIDDEN LOS ANGLES, HIDDEN LA, HIDDENLA, HIDDEN L.A." [Dkt. 51-1 at 25; ¶55-57.] Hour Media asserts that "[h]ad Plaintiffs not misrepresented that they infringed on domains and marks that are apparently registered to Garrett, Hour would not have closed on the APA as drafted." [Dkt. 51-1 at 26; ¶63.] Hour Media further asserts that it was prohibited from publishing Los Angeles Magazine with a "Hidden LA" cover story, which resulted in lost newsstand sales, subscriptions, and web audience. [*Id*; ¶64]

Here, Hour Media fails to sufficiently allege both the misrepresentation and reliance elements of a fraud claim. The fact that Emmis settled a lawsuit unrelated to the sale at issue does not render the above provision of the APA a "material misrepresentation." As noted by Emmis, Hour Media is not alleging it was induced to enter into the APA because Emmis

5

represented the "Hidden LA" mark was available, or that it relied upon the availability of that mark. In fact, it could not do so because Scheduled 1.1(e) of the APA lists the registrations and trademarks owned by Emmis and the mark Hidden LA is not on the list. [Dkt. 5-1 at 54-58.] The circumstances constituting fraud must be pleaded with particularity. Fed. R. Civ. P. 9(b). As Hour Media's skeletal allegations in Count IV do not state a plausible claim for fraud, the motion to amend must be **DENIED** as to this counterclaim.

### IV.  Conclusion

Based on the foregoing, Defendant's *Motion for Leave to File Amended Answer, Affirmative Defenses, and Counterclaim* [Dkt. 51] is **DENIED** with regard to the two proposed fraud claims. The Motion is **GRANTED** with regard to the breach of contract and indemnification claims not challenged by Plaintiff. Defendant shall filed an amended version of the *Answer, Affirmative Defenses, and Counterclaim* consistent with this Order on or before **March 5, 2018**.

SO ORDERED.

Dated:  23 FEB 2018

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Manuel Herceg
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
mherceg@taftlaw.com

Richard A. Kempf
TAFT STETTINIUS & HOLLISTER LLP
rkempf@taftlaw.com

Patrick C. Lannen
PLUNKETT COONEY, P.C.
plannen@plunkettcooney.com

Stephen J. Peters
PLUNKETT COONEY, PC (Indianapolis)
speters@plunkettcooney.com

David I. Rubin
PLUNKETT COONEY, PC (Indianapolis)
drubin@plunkettcooney.com